UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                              Chapter 7

Eletson Holdings, Inc., *et al.*                    Case No. 23-10322 (JPM)

               Alleged Debtors.

-------------------------------------------------------------------x

Eletson Holdings, Inc., Eletson Finance (US) LLC,   Adversary Proceeding
Agathonissos Finance LLC,
                                                    No. 23-01132-JPM
               Plaintiffs,

v.

Murchinson Ltd., Nomis Bay Ltd., BPY Limited,

               Defendants.

-------------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT IN THE ADVERSARY PROCEEDING

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT .....................................................................................................................4

I.     The Court Must Dismiss the Complaint Because It
Does Not Have Personal Jurisdiction Over Defendants ..............................................4

     A. Legal Standards......................................................................................................4

     B. The Complaint Fails to Allege Facts Establishing Personal Jurisdiction .....................6

          1.  Insufficent Factual Allegations to Support Personal Jurisdiction...........................6

          2.  Insufficent Factual Allegations for Waiver of Personal Jurisdiction......................7

          3.  Insufficent Factual Allegations to Assert Conspiracy Jurisdiction.........................8

II.    The Court Must Dismiss the Complaint Because Plaintiffs Did not Properly Serve It
Upon Defendants ........................................................................................................9

III.   The Court Should Dismiss the Complaint Because It
Fails to State Plausible Claims ..................................................................................12

     A. The Court Should Dismiss Count I Because
There was No Breach of the Indenture ....................................................................13

     B. The Court Should Dismiss Count II Beccause Defendants Are Not Parties to the
Contracts, Plaintiffs Did Not Comply with the Second RSA, and There Has Been No
Material Breach of the OCM Financing Stipulation...................................................16

     C. The Court Should Dismiss Count III Because the Complaint Fails to Allege Any
Communication with the Alleged Breaching Noteholders or Defendants Had
Knowledge of the Terms at Issue, and There Has Been No Material Breach by any
Unidentified Consenting Noteholders ......................................................................20

     D. The Court Should Dismiss Count IV Because a First-Filed Action Will Resolve the
Same Issue and the Claim is Redundant of Counts II and III ....................................22

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 8 (2d Cir. 2023) .............................................................................................22, 23

*American Standard v. Oakfabco, Inc.*,
498 F.Supp.2d 711 (S.D.N.Y. 2007) .........................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................12

*Bassi v. N.Y. Medical College*,
No. 19-CV-7542, 2023 WL 2330478 (S.D.N.Y. Mar. 2, 2023) ...............................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................12

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) .......................................................................4

*Chalas v. Pork King Good*,
No. 22-CV-03894, 2023 WL 3293639 (S.D.N.Y. May 5, 2023) ...............................25

*D'Andrea v. Rafla-Demetrious*,
146 F.3d 63 (2d Cir. 1986) .................................................................................14, 16

*Daimler AG v. Bauman*
571 U.S. 117 (2014) ....................................................................................................5

*Daou v. BLC Bank, S.A.L.*,
42 F.4th 120 (2d Cir. 2022) ........................................................................................4

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) ......................................................................................12

*Dow Jones & Co. v. Harrods Ltd.*,
237 F. Supp.2d 394 (S.D.N.Y. 2002), *aff'm* 346 F.3d 357 (2d Cir. 2003) ...................23

*Fairman v. Hurley*
373 F. Supp. 2d 227 (W.D.N.Y. 2005) ......................................................................11

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
422 F. Supp. 2d 357 (S.D.N.Y. 2006) ......................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011) ...................................................................................................5

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.,*
No. 20-CV-967, 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ....................................4

*In re Greater Ministries Int'l, Inc.,*
282 B.R. 496 (Bankr. M.D. Fla. 2002) .....................................................................10

*In re Lyondell Chem. Co.,*
543 B.R. 127 (Bankr. S.D.N.Y. 2016) .........................................................................4

*In re MF Glob. Holdings Ltd.,*
561 B.R. 608 (Bankr. S.D.N.Y. 2016) .......................................................................10

*In re Teligent, Inc.,*
No. 01-12974, 2004 WL 724945 (Bankr. S.D.N.Y. Mar. 30, 2004) ........................6, 7

*In re Terrorist Attacks on September 11, 2001,*
714 F.3d 659 (2d Cir. 2013) ........................................................................................5

*Jack. L. Inselman & Co. v. FNB Fin. Co.,*
41 N.Y.2d 1078, 364 N.E.2d 1119, 396 N.Y.S.2d 347 (N.Y. 1977) ...........................14

*Jackson v. City of New York*
No. 14-CV-5755, 2015 WL 4470004 (S.D.N.Y. June 26, 2015) .................................9

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir.1998) .....................................................................................4, 7

*King Cnty., Wash. v. IKB Deutsche Industriebank, AG,*
769 F. Supp. 2d 309 (S.D.N.Y. 2011) ..........................................................................4

*Krasa v. Dial 7 Car & Limousine Serv., Inc.,*
147 A.D.3d 744, 46 N.Y.S.2d 196 (2d Dep't 2017) .................................................12

*Lama Holding Co. v. Smith Barney, Inc.,*
88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996) ...................14, 20, 21

*Leasco Data Processing Equip, Corp. v. Maxwell*
468 F.2d 1326 (2d Cir. 1972) .....................................................................................9

*Lehigh Valley Indus. v. Birenbaum,*
527 F.2d 87 (2d Cir. 1975) ..........................................................................................8

*Levy v. Zimmerman,*
72 Misc.3d 1213(A), 150 N.Y.S.3d 233, 2021 N.Y. Slip. Op. 50738(U)
(Sup. Ct. N.Y. Co., July 30, 2021), *aff'm* 163 N.Y.S.3d 804 (1st Dep't 2022) ............................19

*New Windsor Volunteer Ambulance Corps. V. Meyers,*
442 F.3d 101 (2d Cir. 2005) ........................................................................................17

*Nielson Co. (US) LLC v. Success Systems,*
112 F.Supp. 83 (S.D.N.Y. 2015) ..................................................................................16

*Olympus Corp. v. Dealer Sales & Serv., Inc.*
107 F.R.D. 300 (E.D.N.Y. 1985) ..................................................................................11

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,*
484 U.S. 97 (1987) ..........................................................................................................9

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
609 F.3d 30 (2d Cir. 2009) ..............................................................................................4

*Rush v. Savchuk,*
444 U.S. 320 (1980) ........................................................................................................4

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.,*
No. 03-CV-3120,, 2006 WL 2034663 (S.D.N.Y. Jul. 19, 2006) ....................................9

*Singer v. Bell,*
585 F. Supp. 300 (S.D.N.Y. 1984) ..................................................................................8

*Taboola, Inc. v. Ezoic, Inc.,*
No. 17-CV-9909, 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) ..................................21

*Tang Capital Partners, LP v. BRC, Inc.,*
No. 22-CV-3476, 2023 WL 2396635 (S.D.N.Y. Mar. 8, 2023) ....................................12

*Thomas v. Ashcroft*
470 F.3d 491 (2d Cir. 2006) ............................................................................................5

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
486 U.S. 694 (1988) ......................................................................................................10

*Walden v. Fiore,*
134 S. Ct. 1115 (2014) ....................................................................................................6

*Water Splash, Inc. v. Menon,*
581 U.S. 271 (2017) ......................................................................................................10

*Zeballos v. Tan*,
No. 06-CV-1268, 2006 WL 1975995 (S.D.N.Y. July 10, 2006) ..................................................11

*242 Partners, L.P. v. Gelb*,
No. 12-CV-2561, 2012 WL 2309060 (S.D.N.Y. June 18, 2012) ...............................................23

**Statutes:**

N.Y. C.P.L.R. §312-a (McKinney 2023) ...............................................................................11, 12

**Rules:**

Fed. R. Bankr. P. 9027(g) ........................................................................................................11

Fed. R. Civ. Proc. 12(b)(2) .......................................................................................................4

Fed. R. Civ. P. 12(b)(5).............................................................................................................9

Fed. R. Civ. P. 12(b)(6).............................................................................................................12

Fed. R. Civ. P. 81(c) .................................................................................................................11

# PRELIMINARY STATEMENT

Plaintiffs are the issuers of First Preferred Ship Mortgage Notes in the approximate aggregate principal amount of $314 million that matured on January 14, 2022 (the "Notes"). They were issued under an Indenture dated July 2, 2018 (the "Indenture"). Wilmington Savings Fund Society, FSB ("Wilmington") is the Trustee under the Indenture.

Nearly a year after the Notes matured, Wilmington sued Plaintiffs to collect over $354 million in principal and interest owed under the Notes to the Noteholders. Subsequently, three creditors, including Pach Shemen LLC ("Pach Shemen"), filed an Involuntary Petition against Plaintiffs before this Court entitled *In re Eletson Holdings, Inc.,* No. 23-10322, because Plaintiffs had failed to repay the principal and interest long-overdue under the Notes (the "Core Action"). Subsequently, Plaintiffs filed a Motion to Dismiss the Involuntary Petition in the Core Action (the "BK Motion") upon the grounds, *inter alia*, that the Petitioners, including Pach Shemen, were not *bona fide* creditors because the transfers of Notes to them were allegedly null and void under the Second Restructuring Support Agreement dated October 29, 2019 (the "Second RSA") and a Stipulation, Wavier and Release dated June 2020 (the "OCM Financing Stipulation").

Six days after filing the BK Motion, Plaintiffs filed the Complaint in New York State Court against Murchinson Ltd. ("Murchinson"), Nomis Bay Ltd. ("Nomis"), and BPY Limited ("BPY") (collectively "Defendants") asserting claims based on the same alleged transfer provisions of the Second RSA and OCM Financing Stipulation and seeking to nullify the transfer of the Notes to Defendants and, by extension, to the Core Action Petitioner Pach Shemen.

Defendants are each foreign entities organized under the laws of Canada or Bermuda. The Complaint asserts no factual allegations concerning their conduct in New York, but rather, it asserts the boilerplate language from New York's personal jurisdiction statute, quotes from the

Indenture, which has a personal jurisdiction waiver that does not apply to the Noteholders, such as Defendants, and the Second RSA, which Plaintiffs repeatedly allege that Defendants had not joined, and thus, they are not a party thereto. And well aware that they were foreign entities, Plaintiffs then failed to effect legal service of process of the Complaint upon Defendants. They merely mailed either the Summons or the Summons and Complaint to Defendants, which does not satisfy the Hague Convention, New York law, or the Federal Rules of Civil Procedure.

Finally, as evidenced by the documents attached to the Complaint, the Complaint fails to assert plausible claims against Defendants. Plaintiffs' request for a declaratory judgment is redundant of their improper claims, and appears to be procedural posturing, in a race to *res judicata* to obtain the nullification of the Notes, which were subsequently transferred to, and are held by, Pach Shemen in the Core Action.

For the reasons set forth below, the Court should grant the Motion and dismiss the Complaint, pursuant to F.R.C.P. Rules 12(b)(2), (5) and (6), because it fails to assert personal jurisdiction over Defendants; Plaintiffs failed to effect service of process upon Defendants; and the Complaint fails to assert plausible claims.

## STATEMENT OF FACTS

In light of the Court's familiarity with the factual issues in the Core Action, Defendants will not recite the Complaint's allegations herein. Rather, in the interest of brevity, Defendants highlight the below key facts for the Court's consideration.

Murchinson is a corporation organized under the laws of Canada with its principal place of business in Toronto, Canada. Compl. ¶9. Nomis and BPY are each mutual fund companies organized under the laws of Bermuda. *Id.* ¶¶10-11. The Complaint does not assert a single

factual allegation concerning any Defendants' contact with the State of New York. *See id., generally.*

Plaintiffs sent a copy of the Summons via regular mail upon Nomis and BPY in Bermuda, and a copy of the Summons and redacted Complaint via express mail service upon Murchinson in Canada. James Keyes Declaration (the "Keyes Decl.") at ¶¶3-4; Mark Lichtenstein Declaration (the "Lichtenstein Decl.") at ¶¶3-4. Plaintiffs never filed Affidavits of Service with the Court. *See* Docket, *Eletson Holdings Inc., et al. v. Murchinson Ltd., et al.,* No. 651956/2023 (N.Y. Sup. Ct., N.Y. Co.) (the "NY Action").

On January 15, 2022, the Notes matured. Compl. at Exh. E, p.2. Section 6.03 of the Indenture provided that Wilmington "may pursue any remedy to collect the payment of principal, premium, if any, and interest on the Notes…." *Id.* at Exh. A, §6.03.

The Complaint repeatedly alleges that Defendants are not parties to the Second RSA or OCM Financing Stipulation. *See id.* at ¶¶15, 42-44, 49, 79, 87, and 112. The Second RSA's Milestone's mandated that Plaintiffs either consummated the Out-of-Court Transaction or filed a Chapter 11 case by January 2, 2020. Compl. at Exh. B at p. 12 and Exh. C thereto. The OCM Financing Stipulation enumerated protections for the parties providing financing in the event of a bankruptcy filing. *See id.* at Ex. D, p. 2. In the Core Action, Defendants had not taken any confliction position or asserted any challenge to the financing or claims of the parties that provided financing under OCM Financing Stipulation. *See* Docket, Core Action.

The first-filed BK Motion seeks a finding that the transfers of the Notes to Defendants are void *ab initio*. *See* Docket No. 41, Core Action. The Complaint's request for a declaratory judgment seeks a finding that the transfers of the Notes to Defendants are void *ab initio*. Compl. ¶¶127-128, 133.

**ARGUMENT**

I.     **The Court Must Dismiss the Complaint Because It
       Does Not Have Personal Jurisdiction Over Defendants.**

A.     **Legal Standards**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a

*prima facie* showing that jurisdiction exists." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 128–29

(2d Cir. 2022); Fed. R. Civ. Proc. 12(b)(2).  This requires "making legally sufficient allegations

of jurisdiction, including an averment of facts that, if credited, would suffice to establish

jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d

Cir. 2009) (internal quotation marks omitted).  The Court is "not bound to accept as true a legal

conclusion couched as a factual allegation," and a plaintiff may not rely on "conclusory non-fact-

specific jurisdictional allegations" to overcome a motion to dismiss.  *Jazini v. Nissan Motor Co.,*

148 F.3d 181, 185 (2d Cir.1998); *see also In re Lyondell Chem. Co.*, 543 B.R. 127, 137 (Bankr.

S.D.N.Y. 2016) ("conclusory allegations are not enough to establish personal jurisdiction"); *King*

*Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 316 n.28 (S.D.N.Y.

2011) ("[C]onclusory non-fact-specific jurisdictional allegations...will not establish personal

jurisdiction.").

Plaintiff bears the "burden to establish a *prima facie* case of personal jurisdiction against

*each* Defendant as to *each* claim asserted."  *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397

(S.D.N.Y. 2021); *see Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to

attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties'

together and aggregating their forum contacts," because "[t]he requirements of *International*

*Shoe* . . . must be met as to each defendant"); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,

No. 20-CV-967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) ("In relying only on group

- 4 -

pleadings, in which it conflates multiple parties and fails to provide specific allegations, Plaintiff neglects its burden of establishing personal jurisdiction over each defendant.").

A plaintiff may seek to establish either general or specific personal jurisdiction. General jurisdiction permits a court to hear any claims against the defendant, and because it provides jurisdiction in all cases, a plaintiff must meet a high burden and establish that the defendant's contacts with the state "are so 'continuous and systematic' as to render [it] essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alteration in original). For a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction." *Id.* at 137. Only in an "exceptional case" would a company have contacts that are "so substantial and of such a nature as to render it at home" in a forum other than in those places where it is organized to do business and where it maintains its principal place of business. *Id.* at 139, n.19.

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). It "exists when a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum," *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). The defendant's conduct must form the necessary connection with the forum State for its courts to have jurisdiction over him. *See, e.g.*, *Thomas v. Ashcroft*, 470 F.3d 491, 495–96 (2d Cir. 2006) (affirming dismissal on personal jurisdiction grounds where plaintiff "failed to show that his cause of action arose" from transactions that took place in New York).

In addition, the "Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). In order to satisfy due process, personal jurisdiction may not be exercised over an out-of-state defendant unless the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*

As demonstrated below, the Complaint's factual allegations fall far short of stating a *prima facie* case for personal jurisdiction over each Defendant.

**B.     The Complaint Fails to Allege Facts Establishing Personal Jurisdiction.**

1.     Insufficient Factual Allegations to Support Personal Jurisdiction

The Complaint does not allege any contacts between Defendants and New York State, and it does not begin to demonstrate a *prima facie* case of personal jurisdiction over any Defendant. *See generally,* Compl. Accordingly, it "would be an understatement to describe the plaintiff's jurisdictional allegations as legally insufficient." *In re Teligent, Inc.*, 01-12974, 2004 WL 724945, at *5 (Bankr. S.D.N.Y. Mar. 30, 2004). Each Defendant is alleged to be an entity organized under the laws of either Bermuda or Canada, and only Murchinson's principal place of business is identified, as Toronto, Canada. Compl. ¶¶ 9-11. The Complaint does not allege that Defendants have a presence in the United States, or have had *any* contact, let alone sufficient contact, with New York State related to the claims. Indeed, the only "conduct" alleged as to Defendants is the conclusory, group-assertion that "Pach Shemen, Murchinson, Nomis Bay, and BPY Limited, separately and together, have induced Wilmington to breach the Indenture by acting on Pach Shemen's invalid instructions to file suit against Plaintiffs." Compl. ¶ 105. Left unsaid is where and how Defendants "induced Wilmington to breach the Indenture," and how that unspecified inducement amounted to contact with New York State. Indeed, Plaintiffs do not

even allege where Wilmington and Pach Shemen are located, or if the Notes were sold in New York State.

Plaintiffs attempt to invoke personal jurisdiction over Defendants through *pro forma*, boilerplate allegations, including that each Defendant "transacts business within New York or contracts anywhere to supply services in New York; committed a tortious act within New York; and/or committed a tortious act without New York and regularly conducts, solicits, or transacts business in New York or derives substantial revenue therefrom and has intended its wrongful conduct to cause and has caused injury in New York." Compl. ¶ 14. These allegations, however, are plainly insufficient to establish personal jurisdiction over Defendants. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir.1998) (conclusory allegations insufficient to support personal jurisdiction on a motion to dismiss); *In re Teligent, Inc.*, 2004 WL 724945, at *5 (same).

Accordingly, the Court must dismiss the Complaint because it does not sufficiently allege that any Defendant is "at home" in the United States such that it is subject to general jurisdiction, or that any Defendant had purposeful minimum contacts with New York State related to the claims that would support an assertion of specific jurisdiction.

2. <u>Insufficient Factual Allegations for Waiver of Personal Jurisdiction</u>

Apparently aware of the personal jurisdiction deficiencies, as an alternative, the Complaint attempts to cobble together a "prima facie" showing of personal jurisdiction from unidentified persons or entities' acceptance of personal jurisdiction in two agreements. Critically, however, the agreements evidence that Defendants are not signatories thereto, and the Complaint does not allege that Defendants agreed to the agreements' terms. As the Complaint states, "parties to the Indenture and the Second Restructuring Support Agreement" – "specifically, the John Doe Defendants" – executed the waivers at issue. Compl. ¶15.

In the Indenture, **only** the "Issuers and the Guarantors" agreed to "irrevocably submit to the jurisdiction of any New York State or United States Federal court sitting in the County of New York." *Id.* at Exh. B, §13.11. The Indenture defines the "Issuers" as the Plaintiffs, and it defines the "Guarantors" as a specific list of entities – not Defendants. *Id.* at Exh. B, pp. 1 (Issuers), pp. 21 (Guarantors). Thus, Defendants waived nothing under the Indenture.

With respect to the Second RSA, Defendants waived nothing thereunder because, as the Complaint repeatedly asserts, Defendants did not join the Second RSA and are not a party thereto. *Id.* at ¶¶42-44, 49, 79, 87, and 112.

3.    <u>Insufficient Factual Allegations to Assert Conspiracy Jurisdiction</u>

Finally, the Complaint alleges that personal jurisdiction is proper because Defendants participated in a "conspiracy"; or more specifically, that a "conspiracy existed to carry out the wrongdoings alleged herein; each defendant participated in the conspiracy; and each co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with this state to subject that co-conspirator to jurisdiction in this state." Compl. ¶ 13. These fact-free, conclusory allegations can never establish personal jurisdiction.

The "bland assertion of conspiracy or agency is insufficient to establish jurisdiction." *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975). Plaintiffs must "make a *prima facie* showing of conspiracy. They must allege specific facts warranting the inference that the defendants were members of the conspiracy, and come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York." *Singer v. Bell*, 585 F. Supp. 300, 302–03 (S.D.N.Y. 1984). Here, the Complaint does not do so. It fails to allege either a conspiracy or to offer "definite evidentiary facts" connecting Defendants with the forum. The Complaint does not establish that *any* conspiracy occurred within New York State. It also does not set forth factual allegations that any alleged conspirator acted in furtherance of

the conspiracy in the forum, or link in any fashion Defendants with New York State. Since "generalized allegations in the Complaint of conspiracy to defraud … a United States company" are insufficient, the Complaint has not adequately alleged a conspiracy sufficient to establish personal jurisdiction over Defendants. *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, 03-CV-3120,, 2006 WL 2034663, at *8 (S.D.N.Y. Jul. 19, 2006) (dismissing complaint where it did not allege acts taken by co-conspirator in the forum with the foreign defendant's knowledge) (*citing Leasco Data Processing Equip, Corp. v. Maxwell,* 468 F.2d 1326, 1343 (2d Cir. 1972) ("[T]he rule in this circuit is that the mere presence of one conspirator ... does not confer personal jurisdiction over another alleged conspirator.")).

## II.    The Court Must Dismiss the Complaint Because <u>Plaintiffs Did Not Properly Serve It Upon Defendants.</u>

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Defendants seek dismissal under Fed. R. Civ. P. 12(b)(5), which "is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Jackson v. City of New York*, 14-CV-5755, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (*quoting* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004)). On a Rule 12(b)(5) motion, Plaintiffs bear the burden of proving adequate service, and the "Court will consider materials outside the pleadings" to determine whether it has jurisdiction. *Id*. at *4-5.

Here, Plaintiffs only attempted to serve the Summons via regular mail upon Nomis and BPY in Bermuda, and the Summons and Complaint via express mail service upon Murchinson in Canada. Keyes Decl. at ¶¶3-4; Lichtenstein Decl. at ¶¶3-4. There is no evidence of any other attempts at service on Defendants. Indeed, Plaintiffs never filed Affidavits of Service

concerning service upon Defendants. *See* Docket, NY Action. Serving only a summons by first class mail or overnight courier service is insufficient service, and the Court must dismiss the Complaint.

Nomis and BPY are citizens of Bermuda, and Murchinson is a citizen of Canada. Compl. ¶¶9-11. Therefore, service of the Complaint must comply with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"); *see In re Greater Ministries Int'l, Inc.*, 282 B.R. 496, 499 (Bankr. M.D. Fla. 2002) (Canada has signed the Hague Convention); *In re MF Glob. Holdings Ltd.*, 561 B.R. 608, 618 (Bankr. S.D.N.Y. 2016) ("Bermuda is a Commonwealth nation part of the United Kingdom, and the United Kingdom is a signatory to the Hague Convention"); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988) ("The Convention provides simple and certain means by which to serve process on a foreign national.").

As an initial matter, the Hague Convention allows service of process by first class mail. As the Supreme Court held, Article 10(a) of the Hague Convention "provides that, as long as the receiving state does not object, the Convention does not 'interfere with ... the freedom' to serve documents through postal channels." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). Thus, service by first class mail "is permissible if two conditions are met: first, the receiving state has not objected to service by mail; ***and second, service by mail is authorized under otherwise-applicable law***." *Id.* (emphasis added).

Here, while the "receiving states," Canada and Bermuda, do not "object" to service of process by mail,[1] Plaintiffs' attempts at service fail because they were not "authorized under

---

[1] *See In re Greater Ministries Int'l, Inc.*, 282 B.R. 496, 499 (Bankr. M.D. Fla. 2002) (Canada); *In re MF Glob. Holdings Ltd.*, 561 B.R. 608, 618 (Bankr. S.D.N.Y. 2016) (Bermuda).

otherwise-applicable law," namely, the law of New York State. The determination of whether this Court has jurisdiction is made "by reference to state law" because "service was attempted only *before* removal to federal court." *Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 1975995, at *6 (S.D.N.Y. July 10, 2006); *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 383 (S.D.N.Y. 2006) ("[F]ederal courts routinely look to state law when evaluating the propriety of service of process in deciding motions to dismiss a complaint in diversity cases removed to federal court."); *see generally* Fed. R. Civ. P. 81(c) (providing that the federal rules "apply to a civil action after it is removed from a state court"); Fed. R. Bankr. P. 9027(g).

New York's Civil Practice Law & Rules do not "permit service of a summons and complaint by simply mailing a copy to a defendant via the U.S. Postal Service or an express delivery service." *Fairman v. Hurley*, 373 F. Supp. 2d 227, 232 (W.D.N.Y. 2005); *Olympus Corp. v. Dealer Sales & Serv., Inc.*, 107 F.R.D. 300, 305 (E.D.N.Y. 1985) (same). The CPLR only authorizes service by mail under Rule 312-a, which requires a Plaintiff to send "by first class mail, postage prepaid, a copy of the summons and complaint, or summons and notice or notice of petition and petition, together with two copies of a statement of service by mail and acknowledgement of receipt…with a return envelope, postage prepaid, addressed to the sender." N.Y. C.P.L.R. §312-a(a) (McKinney 2023). Under CPLR §312-a, service is only deemed complete on the date the signed acknowledgment of receipt is mailed or delivered to the sender. *Id.* §312-a(b); *Fairman*, 373 F. Supp. 2d at 232 (Service "is not effective unless the defendant signs and returns an acknowledgment of receipt.").

Here, Plaintiffs did not serve either the Summons with Notice or the Summons and Complaint upon each Defendant with a statement of service by mail and acknowledgement of receipt or a return envelope, postage prepaid, addressed to the sender. Keyes Decl. at ¶6;

Lichtenstein Decl. at ¶6. Thus, Defendants could not – and did not – sign an acknowledgement of receipt and return it to Plaintiffs. In *Krasa v. Dial 7 Car & Limousine Serv., Inc.*, a New York Appellate Court held that the defendants were not properly served by mail under CPLR §312-a, when, as here, it was "undisputed that the plaintiff failed to send, *inter alia*, copies of acknowledgments of receipt in the form set forth in CPLR 312-a(d) to the defendants, and there is no evidence that any acknowledgment was completed and mailed or delivered to her attorney."). 147 A.D.3d 744, 745, 46 N.Y.S.2d 196 (2d Dep't 2017).

Accordingly, the Court must dismiss this action because service upon Defendants was incomplete under the Hague Convention and the laws of New York State.

## III. The Court Should Dismiss the Complaint Because It Fails to State Plausible Claims.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, if a complaint attaches documents and incorporates them by reference, as here, the Court may consider the documents – such as the Indenture, the Second RSA, and the Wilmington Complaint annexed to the Complaint – when deciding the motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Tang Capital Partners, LP v. BRC, Inc.*, No. 22-CV-3476, 2023 WL 2396635, at *5 (S.D.N.Y. Mar. 8, 2023). As demonstrated below, the Court should

dismiss all claims because: i) the controlling documents demonstrate that Defendants did not induce a breach of the Indenture because there was no breach by the Trustee; ii) they did not breach the Second RSA because they were not a party thereto and Plaintiffs had not performed under the contract; iii) they did not tortiously interfere with the Second RSA or OCM Financing Stipulation by purchasing securities because Plaintiffs had not performed under the Second RSA and there was no material breach of the OCM Financing Stipulation; and iv) the request for a declaratory judgment is redundant of other claims and it is moot because Plaintiffs' first-filed BK Motion will resolve the issues for which the Complaint seeks a declaratory judgment.

A.     **The Court Should Dismiss Count I Because**
       **There was No Breach of the Indenture.**

In the Count I, the Complaint alleges that non-party Pach Shemen induced Wilmington to breach the Indenture by directing it to file suit against Plaintiffs based on an allegedly wrongly-declared event of default. Compl. ¶90-106. It had earlier alleged that Wilmington knowingly violated the Indenture and Second RSA (which did not amend the Indenture) when it filed suit against Plaintiffs to collect amounts due under the Notes issued under the Indenture. *Id.* ¶46-52. The Complaint quotes only from Section 6.05 of the Indenture for the basis of this claim – a provision that provides a majority of noteholders "may" direct Wilmington to take action and for which it "may" refuse to follow any direction that conflicts with the Indenture. *Id.* ¶47. The Complaint asserts that Wilmington had no authority to file the legal action seeking to enforce any claimed right or remedy under the Indenture and such instructions – by non-party Pach Shemen – directly caused Wilmington to breach the Indenture. *Id.* ¶52. The Court should dismiss Count I because the Indenture overrides these baseless allegations and unequivocally demonstrates that Wilmington was not in breach. Wilmington acted pursuant to its express

authority stated in the Indenture to collect the hundreds of millions of dollars owed by Plaintiffs under the matured Notes.

Under New York law, a complaint must establish five elements to make out a claim for tortious interference with contract: (1) existence of a valid contract between Plaintiffs and a third party; (2) Defendants' knowledge of that contract; (3) Defendants' intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contact; and (5) damages resulting therefrom. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996). For such a cause of action, "it is axiomatic that there must be a breach of that contract by the other party." *Jack. L. Inselman & Co. v. FNB Fin. Co.*, 41 N.Y.2d 1078, 1080, 364 N.E.2d 1119, 396 N.Y.S.2d 347 (N.Y. 1977), *D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1986) (per curiam) (holding under New York law that, "[b]ecause there was no breach of contract in the instant case, plaintiff's tortious interference with contractual relations claim must fail."); *Bassi v. N.Y. Medical College*, No. 19-CV-7542, 2023 WL 2330478, at *16 (S.D.N.Y. Mar. 2, 2023) ("[b]ecause Plaintiff cannot prove an underlying breach of contract, Plaintiff's tortious interference with contract claim must fail.").

Here, the Court should dismiss this claim because Wilmington did not breach the Indenture. As set forth in the Wilmington Complaint, Plaintiffs – the Issuers – failed to repay the principal and unpaid and accrued interest on the Notes, which matured on January 14, 2022, and Wilmington sued Plaintiffs to collect the monies due under the notes: namely, $354 million. Compl. at Exh. E, ¶¶1-5. While the Complaint only quotes from Section 6.05 of the Indenture, the Complaint fail to inform the Court of the explicit, authorized power conferred upon Wilmington to commence a legal proceeding to collect the principal and interest due on the matured Notes. Specifically, Section 6.03 provides:

> If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.
>
> The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder of a Note in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

*Id.* at Exh. A, §6.03. Therefore, the Complaint fails to assert an underlying breach of the Indenture by Wilmington because Section 6.03 authorized it to initiate a legal proceeding to collect the payment of principal and interest due under the matured Notes – Notes that had matured nearly a year prior to Wilmington filing its action. *See id*. at Exh. E, p.2 (Wilmington Complaint filed on January 11, 2023 to collect on Notes that matured on January 15, 2022).

Further, the Second RSA and OCM Financing Stipulation did not strip Wilmington of this authority or impact its ability to collect on the principal and interest owed. Wilmington is not a party to either the Second RSA or OCM Financing Stipulation. *Id*. at Exh. B, p. 2, Exh. D, p. 1. Those agreements were executed by certain Noteholders but they did not amend the Indenture because they did not meet the Indenture's specific provisions setting out how the Parties, including Wilmington, must amend the Indenture. Compl., Exh. A, §9.02. Finally, while the Indenture provides authority for a majority of Noteholders to waive Plaintiffs' past defaults under the Indenture, it does not authorize a majority of Noteholders to waive a default in the payment of principal of, or any interest on, any Notes. *Id*. at §6.04.[2]

---

[2] In the Complaint, Plaintiffs assert that, in the Second RSA, the Consenting Noteholders agreed to "forebear from" giving any instructions to Wilmington to exercise any rights or remedies under the Indenture. *See* Compl. ¶26. The Complaint, however, fails to provide that such forbearance was limited to defined "Specified Defaults", which included then-Acknowledged Defaults and defaults with respect to the failure to pay interest when due. *See id.*, Exh. B at

Accordingly, the Court should dismiss Count I because the Indenture and the Wilmington Complaint evidence that Wilmington did not breach the Indenture;[3] consequently, the tortious interference with contract claim fails as a matter of law. *D'Andrea*, 146 F.3d at 66.

**B.    The Court Should Dismiss Count II Because Defendants Are Not Parties to the Contracts, Plaintiffs Did Not Comply with the Second RSA, and There Has Been No Material Breach of the OCM Financing Stipulation.**

In Count II, the Complaint alleges that Defendants breached Section 7 of the Second RSA and Sections 4(a)-(b) of the OCM Financing Stipulation when they acquired the Notes because they had not delivered a requisite written joinder to Plaintiffs when they acquired the Notes – a failure that the Complaint alleges rendered the acquired Notes "null and void."  Compl. ¶¶28, 108-114.  The Court should dismiss this claim because:  i) Defendants were never a party to the Second RSA and the OCM Financing Stipulation, and the Complaint does not allege that the Notes contained a Legend thereon to inform purchasers of such transfer restrictions; and ii) Plaintiffs have not complied with their obligations under the Second RSA, and there has been no material breach of the OCM Financing Stipulation.

Under New York law, to prevail on a breach of contract, a plaintiff must prove a contract existed between the parties, performance of the contract by one party; breach by the other party; and damages.  *Nielson Co. (US) LLC v. Success Systems*, 112 F.Supp. 83, 97 (S.D.N.Y. 2015).  On their face, the Second RSA and OCM Financing Stipulation evidence that Defendants are not

---

§36(a).  It did not and could not include any agreement to forebear on the collection of the default in principal due under the Notes after they had matured because such a term would violate Section 6.04 of the Indenture.

[3] Rather than respond to Wilmington's Complaint, Plaintiffs invoked the automatic stay provisions under the Bankruptcy Code to stay the action filed by Wilmington.  *See* Docket No. 23, *Wilmington Savings Fund Society, FSB v. Eletson Holdings, Inc., et al.,* No. 23-CV-00261 (S.D.N.Y.).

parties to those contacts.  Indeed, the Complaint repeatedly ***admits*** that Defendants never executed or delivered any written joinders to the Second RSA and OCM Financing Stipulation – written joinders that would "bound them to" the terms of the Second RSA and OCM Financing Stipulation.  *See* Compl. ¶¶15, 42-44, 49, 79, 87, and 112.

Moreover, while the Complaint argues *ad nauseum* that Defendants' purchases of the Notes violated the transfer restrictions of the Second RSA and OCM Financing Stipulation, the Complaint fails to make any allegation that the transfer of the Notes, via purchase, to Defendants violated Section 2.06 of the Indenture, which governed the transfer and exchange of the Notes. *See* Compl. at Exh. A, §2.06.  While the Indenture specifies the Legends to be placed on the Notes to inform purchasers of transfer and resale restrictions, *see id.* at §2.06(g), the Complaint does not allege that the purchased Notes had any Legends concerning the transfer limitations allegedly imposed under the Second RSA or OCM Financing Stipulation.  *See generally,* Compl.

Accordingly, the Complaint fails to allege a breach of contract claim against Defendants because they are not parties to the allegedly breached contacts.

The Complaint further fails to assert a breach of contract claim because the documents attached to the Complaint evidence that Plaintiffs failed to perform their obligations under the Second RSA.  Under New York law, when a party has breached a contract by failing to perform its obligations thereunder that breach may excuse the non-breaching party from further performance if the breach is material.  *New Windsor Volunteer Ambulance Corps. V. Meyers*, 442 F.3d 101, 117 (2d Cir. 2005).  For a breach to be material, "it must go to the root of the agreement between the parties."  *Id.*  As evidenced by the materials attached to the Complaint, Plaintiffs materially breached the Second RSA over a year before Defendants purchased the Notes and relieved the Noteholders from any conditions therein.

In October 2019, Plaintiffs entered into the Second RSA with certain Noteholders with respect to the Notes issued under the Indenture – Notes that matured in January 2022. Compl., Exh. B, p. 2; Exh. E, p.2. The root of the Second RSA was for Plaintiffs to restructure the Notes – either out-of-court or in-court through a pre-packaged Chapter 11 plan. *Id.* at Exh. B, p. 4. The restructuring was to occur pursuant to define Milestones, which were set forth in Exhibit C to the Second RSA. *Id.* at p. 12, Exh. C thereto. Reflecting that time was of the essence, the Milestones provided defined time periods and end dates for Plaintiffs to satisfy their obligations.

Milestone No. 1 provided, "as soon as reasonably practicable, but in no event later than October 31, 2019, the Company shall have entered into a memorandum of agreement . . . ." and Milestone No 2. provided, "as soon as reasonably practicable, but in no event later than 15 days after the Company enters into a memorandum of agreement . . . the Solicitation Materials shall be agreed . . . ." *Id.* Then, Milestone No. 3 stated "on or before 21 days after the Company enters into a memorandum of agreement . . . the Company shall commence a solicitation of holders of Senior Notes seeking the acceptance of the Out-of-Court Transaction, or, alternatively, the Plan (the "Solicitation Commencement Date"), provided that Holdings may request an extension of the Solicitation Commencement Date by seven (7) days . . . ." and thereafter, Milestone No. 4 provided "on or before 30 days after the Solicitation Commencement Date, the Company shall receive the approval and acceptance of the Plan . . . and the Solicitation Termination Date shall have occurred." *Id.* Milestones Nos. 6 and 7 mandated that the Debtors consummate the Out-of-Court Transaction (No. 6) or the Debtors commence the Chapter 11 Case "within 5 days of the Solicitation Termination Date." *Id.* Thus, under the Second RSA, on or before the outside date of ***January 2, 2020***, Plaintiffs were to have either consummated the Out-of-Court Transaction or filed a Chapter 11 case. *Id.* Plaintiffs did neither. Two years later,

on January 15, 2022, the Notes matured, and nearly a year later, Wilmington sued Plaintiffs to collect the unpaid principal and interest due under the Notes. *See* Compl. at Exh. E, pp. 1-2.

Therefore, the documents annexed to the Complaint definitively evidence that Plaintiffs did not fulfill all their obligations under the Second RSA – in fact, they were in breach years ago; consequently, the Noteholders to the Second RSA – and by extension Defendants – were excused from the purported Note transfer restrictions contained therein. *See Levy v. Zimmerman*, 72 Misc.3d 1213(A), 150 N.Y.S.3d 233, 2021 N.Y. Slip. Op. 50738(U) at *7 (Sup. Ct. N.Y. Co., July 30, 2021), *aff'm* 163 N.Y.S.3d 804, 204 A.D.2d 804 (1st Dep't 2022) (granting motion to dismiss where unambiguous contract at issue in the complaint demonstrated that no breach occurred).[4]

With respect to the OCM Financing Stipulation, the root of the agreement was to provide rights and protections to the financing parties (the "OCM Parties") under the OCM Financing in a bankruptcy proceeding in the event that Plaintiffs commenced a Chapter 11 Case. *See* Compl. at Ex. D, p. 2. Since Plaintiffs never filed a Chapter 11 Case, there could be no material breach by the Noteholders concerning the OCM Parties' rights under the OCM Financing Stipulation. *See id.* Further, with respect to the Involuntary Petition filed in the Core Action, the Complaint contains no allegation that there has been any breach of the material provisions of the OCM Financing Stipulation – *i.e.*, Defendants seeking to restrict any rights of the OCM Parties in the bankruptcy. *See generally,* Compl.*, see also,* Docket, Core Action.

Accordingly, the Court should dismiss Count II.

---

[4] In the interest of brevity, Defendants incorporate and adopt the arguments that Plaintiffs abandoned and materially breached the Second RSA that are set forth in the Petitioning Creditors' Objections to Debtors' Motion to Dismiss. *See* Docket No. 126 at ¶¶16-19, 38-55, Core Action.

**C.** **The Court Should Dismiss Count III Because the Complaint Fails to Allege Any Communication with the Alleged Breaching Noteholders or Defendants Had Knowledge of the Terms at Issue, and There Has Been No Material Breach by any Unidentified Consenting Noteholders.**

In Count III, the Complaint alleges that Defendants induced unidentified Consenting Noteholders to breach the Second RSA and OCM Financing Stipulation when Defendants purchased the Notes. *See* Compl. ¶¶117-125. The Court should dismiss this claim because: i) the Complaint fails to allege any communication from Defendants to the non-identified Consenting Noteholders other than a reference to Defendants paying $2 million for their Notes; ii) the Complaint fails to allege the requisite knowledge allegations; and ii) there have been no material breaches of either the Second RSA or OCM Financing Stipulation by any unidentified Consenting Noteholders.

At the outset, the Complaint does not attach the Notes or allege that they contain any form of Legend informing prospective purchasers of any transfer or resale restrictions. *See generally,* Compl. The Complaint also does not allege any communication by Defendants to the unidentified Consenting Noteholders to induce them to breach a contract. *Id.* Rather, the Complaint acknowledges that Defendants paid $2 million in cash for their Notes. *Id.* at ¶40. In this regard, the Complaint does not allege that this purchase was made in "bad faith" as the only allegations of "bad faith" set forth in the Complaint is directed at Wilmington's conduct. *See generally,* Compl., *compare, id.* at ¶¶3, 5, 59. Therefore, on this basis alone, the Court should dismiss the tortious interference with contract claim because the Complaint lacks any allegations concerning Defendants' intentional procurement of the third-party's breach of the contract without justification. *See Lama Holding*, 88 N.Y.2d at 424.

The Complaint also fails to adequately allege that Defendants knew about the transfer restrictions contained in the Second RSA and OCM Financing Stipulation. An essential element

of a tortious interference with contact claim is that the Defendants had knowledge of the contract that they intentionally sought a third-party to breach without justification. *Lama Holding Co.*, 88 N.Y.2d 413, 424. Thus, the Complaint "must plead facts showing not only that [the party] had knowledge of the existence of the contract, but that it had actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached." *Taboola, Inc. v. Ezoic, Inc.*, No. 17-CV-9909, 2020 WL 1900496, *9 (S.D.N.Y. Apr. 17, 2020). While a complaint need not allege that defendants had "perfect knowledge of the contract," it "must plead specific allegations of the defendant's knowledge of the contract, including some knowledge of the terms and conditions of the allegedly interfered-with contact." *Id.* at *10. Importantly, "specific allegations may not consist of conclusory assertions of knowledge." *Id.*

Here, the Complaint contains no particular allegations that Defendants had been previously provided with, or knew the terms or substance of, the Second RSA and/or OCM Financing Stipulation prior to purchasing the Notes – none. Rather, the Complaint asserts the same conclusory allegation that Defendants "knew about" the Second RSA and OCM Financing Stipulation. *Id.* ¶¶93-94, 119. These unsupported allegations are insufficient to set forth a claim. Further, there is no such knowledge to be found from the context set forth in the Complaint because the Complaint acknowledges that Defendants paid $2 million in cash for the Notes. Compl.¶40. It then goes on to repeatedly allege that Defendants failed to provide any form of written joinder to the Second RSA and OCM Financing Stipulation to Plaintiffs, and as a result, Defendants' purchase of the Notes is void *ab initio*. *Id.* at ¶¶42-44, 49, 79, 84. In this context, it is not reasonable to find that a party would pay $2 million for Notes that it knew were void *ab initio*, as the Complaint proffers.

Finally, to assert a viable tortious interference with contract claim, there must have been an actual breach by the party that the Defendants purportedly induced to breach the contract. *D'Andrea,* 146 F.3d at 66. For the reasons detailed in Point III(B) above, the was no breach of the Second RSA by any Consenting Noteholder because, over a year earlier, Plaintiffs had materially breached the Second RSA, and there was no material breach of the OCM Financing Stipulation because there is no allegation that Defendant sought to restrict any rights of the OCM Parties in the bankruptcy. *See supra,* Point III(B).

Accordingly, the Court should dismiss Count III.

### D. The Court Should Dismiss Count IV Because a First-Filed Action Will Resolve the Same Issue and the Claim is Redundant of Counts II and III.

In Count IV, the Complaint seeks a declaratory judgment that Defendants' acquisition of the Notes was null and void *ab initio* under the Second RSA and OCM Financing Stipulation. The Court should decline to exercise its discretion under the Declaratory Judgment Act ("DJA") and dismiss Count IV because: i) there is a first-filed action, in which discovery has occurred, with a pending motion and hearing on the same issue; and ii) the declaratory judgment claim is redundant of the claims set forth in Counts II and III.

At the outset, when, as here, an action seeking a declaratory judgment is removed from state court to the federal court, the DJA – not state declaratory judgment law – provides the procedural mechanism for granting a declaratory judgment in diversity cases. *American Standard v. Oakfabco, Inc.*, 498 F.Supp.2d 711, 715 (S.D.N.Y. 2007). In *Admiral Ins. Co. v. Niagara Transformer Corp.*, the Second Circuit recently explained the six factors a court must consider when determining if it will issue a declaratory judgment under the DJA:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed

> remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

57 F.4th 85, 99-100 (2d Cir. 2023) (quotations omitted). These factors are non-exhaustive, and a district court retains wide latitude to address other factors as relevant to the ultimate question of whether it should or should not adjudicate a declaratory judgment claim. *Id.* at 100. For instance, "the Court must look at more than just the mechanical application of the declaratory judgment standard. The Court must look at the litigation situation as a whole in determining whether it is appropriate for the Court to exercise its jurisdiction over the declaratory judgment action before it." *242 Partners, L.P. v. Gelb*, No. 12-CV-2561, 2012 WL 2309060, at *3 (S.D.N.Y. June 18, 2012). In this regard, a consideration in determining whether to apply the DJA is whether another adequate remedy exists in another pending action in which some or all of the same issues raised in the declaratory judgment action are also in dispute. *Dow Jones & Co. v. Harrods Ltd.*, 237 F. Supp.2d 394, 442 (S.D.N.Y. 2002), *aff'm* 346 F.3d 357 (2d Cir. 2003). Applying these factors and considerations in this case, the Court should dismiss Count IV.

With respect to the first and second factors, the sought declaratory judgment will not serve a useful purpose of clarifying or settling the issue involved because there is a more advanced, first-filed action that would resolve the controversy: the Core Action. As the Court is aware, on April 14, 2023 in the Core Action, Plaintiffs filed the BK Motion on the grounds that, *inter alia,* the Petitioners, including Pach Shemen, were not bona fide creditors because the transfers were allegedly null and void under the Second RSA and OCM Financing Stipulation. ***Six days later***, Plaintiffs filed the Complaint in New York State Court asserting claims based on the same alleged transfer provisions of the Second RSA and OCM Financing Stipulation and

repeatedly referring to Pach Shemen and the Core Action. *See e.g.,* Compl. ¶¶41-45, 49-51, 63-64, 83-85. Indeed, in Count IV, Plaintiffs seek a declaratory judgment for the purposes of seeking to invalidate the Notes, now held by Pach Shemen, *see id.* ¶¶127-128, 133, which is the focus of the BK Motion. Further, while this action is at its infancy, Plaintiffs have been conducting discovery in the Core Action, *see e.g.*, Docket No. 29, Core Action, and the Court has scheduled an evidentiary hearing on the BK Motion to take place on August 9, 2023. *Id.* at No. 112. As a result, the declaratory judgment sought will not serve a useful purpose or offer relief from uncertainty in this case because the Court is proceeding forward with an evidentiary hearing in the Core Action that will resolve the identical issues.

Turning to the third factor, it is clear, from the dates of the Plaintiffs' filings, that Plaintiffs filed the NY Action within days after filing the BK Motion for procedural posturing in a race to *res judicata* in an effort to try to obtain an order from the New York State Court that Defendants' Notes are void *ab initio*, which it would then seek to inject into the Core Action in support of its BK Motion to nullify Pach Shemen's creditor status. Thus, the third factor weighs heavily in dismissal.

The fourth factor is not applicable as there is no encroachment on a state or foreign court.

The fifth and sixth factors also weight heavily in favor of dismissal because the better and more effective remedy is for the Court to resolve the identical issue at the scheduled hearing on the BK Motion, which will also promote judicial efficiency and economy by eliminating duplicative litigation.

Based on the above factors, the Court should decline to exercise its discretion under the DJA and dismiss Count IV.

The Court should also dismiss the declaratory judgment claim because it is redundant of Count II, for breach of the Second RSA and OCM Financing Stipulation, and Count III, for tortious interference with the same contracts. Each of these claims are premised upon the alleged breach and/or procurement of a breach of the transfer of securities provisions therein, which the Complaint asserts made Defendant's purchased Notes null and void. *See* Compl. ¶¶109-115; 117-124. In Count IV, the Complaint redundantly seeks a declaration concerning the effect of the same transfer provisions that are at the core of Counts II and III. *See id.* ¶¶128-133. In such instances, Court have dismissed a declaratory judgment claim when it reiterates the same allegations and seeks similar relief as a separate count. *Chalas v. Pork King Good*, No. 22-CV-03894, 2023 WL 3293639, at *4 (S.D.N.Y. May 5, 2023) (on Rule 12(b)(6) motion dismissing declaratory judgment claim as redundant).

## **CONCLUSION**

For all these reasons, Defendants respectfully submit that the Court should dismiss the Complaint with prejudice and grant Defendants any other relief that the Court deems just and proper.

Dated: July 21, 2023

SICHENZIA ROSS FERENCE LLP

/s *Richard J. Babnick Jr.*
Richard J. Babnick Jr.
Owen A. Kloter, Esq.
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700
Email: rbabnick@srf.law
          okloter@srf.law
*Attorneys for Adversary Proceeding
Defendants Murchinson Ltd., Nomis
Bay Ltd., and BPY Limited*